*Decision will be entered under Rule 50.*

JOHN M. BURDINE REALTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33071. Promulgated June 13, 1930.

*Jesse I. Miller, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

56

**OPINION.**

TRUSSELL: In the first issue the petitioner claims the right to a deduction from income in 1922 of a loss upon an alleged purchase and sale of certain shares of stock in another corporation, the Tucker Shoe Co. The evidence shows that the petitioner acquired the stock for a consideration of $3,600 from its president and majority stockholder, Burdine, who was also secretary and majority stockholder of the Tucker Shoe Co. The purchase and resale of the stock occurred in the month of August, 1922. Within the short space of probably 10 days after acquisition the petitioner sold all of the same stock to the president and second largest stockholder of the Tucker Shoe Co. for a consideration of $1, which was actually paid in cash. The book entries reflect a cost for the stock of $8,600 and proceeds of the sale amounting to $5,001, but this is contrary to the testimony of the interested parties and we attach no importance to the discrepancy, which is entirely unexplained and is, furthermore, of no net effect on the amount of the loss claimed. We think it is too elementary to require discussion, that because of the relations of Burdine to the petitioner as officer, director and

majority stockholder, his dealings with the petitioner should properly be carefully scrutinized and the burden is upon him to make a full disclosure of all of the relevant facts and circumstances. Notwithstanding this, there is nothing in the record to account for the gross disparity in the considerations in evidence in the transactions of purchase and sale by the petitioner. Burdine, the first seller, and P. L. Tucker, the ultimate purchaser of the stock, both took the stand to testify in behalf of the petitioner, and they had full opportunity to explain the transactions, yet they failed to do so. In response to direct questions no explanation was offered or even attempted. We are entirely in the dark in the matter, and feel that upon the record as it lies before us we may not accept a presumption of fairness in both transactions. We are not even prepared to say which, if either, of the transactions may be regarded as the more probable reflection of the actual fair market value of the Tucker Shoe Co. stock in August, 1922, nor does it appear necessary to the petitioner's case for us to make such a choice, for, obviously, if both transactions are not clearly shown to have been fair, then the basis for a claim for a loss vanishes. We, therefore, conclude that we must leave the matter as we find it, with the claimed deduction of a loss of $3,599 in 1922 disallowed by the respondent.

The second issue relates to the following year 1923. In the return filed by the petitioner for that year a deduction was claimed from net income of a bad debt in the amount of $33,166.66. We find a very different situation here. The evidence shows that the indebtedness of the Tucker Shoe Co. to the petitioner was all duly entered upon the books of the petitioner and was attributable to loans by the petitioner, or to liabilities of the Tucker Shoe Co. assumed by the petitioner in consequence of having endorsed notes of the Tucker Shoe Co. The indebtedness was charged off to profit and loss by the petitioner in 1923. The testimony was to the effect that the Tucker Shoe Co. was a going concern at the end of 1922 with a stock in trade on hand ready for sale at a profit to the retail trade which was reasonably to be expected during the then approaching usual winter rush season. At the end of 1923, however, operations had resulted in the disposal of all the assets of the Tucker Shoe Co., and its dissolution, leaving unpaid its indebtedness as stated to the petitioner, its principal creditor, together with a few small debts to mercantile concerns. We see no reason to doubt the transactions under consideration with relation to this issue, and are satisfied of the amount of the indebtedness as claimed. Furthermore, it appears that at the end of the prior year hope was still entertained of profitable operation. We believe there has been a

genuine loss here, and are satisfied of the propriety of accepting the determination of the petitioner concurrently made and reflected on the books that the indebtedness was bad in 1923, consequently we are of the opinion that the deduction of $33,166.66 claimed by the petitioner should be allowed in 1923.

This conclusion disposes of the third issue, which was entirely dependent upon the fact determination relative to the loss in 1923. It is not in dispute that if the petitioner did in fact suffer a net loss for 1923, it may be carried forward and deducted from net income in 1924. The net loss should be computed for 1923 and so carried forward.

*Judgment will be rendered pursuant to Rule 50.*